IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PACTIV CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13-cv-8182 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| JOSE SANCHEZ, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Pactiv Corporation ("Pactiv") brings a one-count declaratory judgment action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3). Pactiv seeks a declaration that it is entitled to set off the amount of a benefit payment that it made for Defendant Jose Sanchez's medical care against a judgement that it has been ordered to pay in a related workers' compensation proceeding. Before the Court are Pactiv's motion for summary judgment [50] and Sanchez's motion to dismiss and motion for summary judgment [59, 73]. For the reasons that follow, the Court grants in part Pactiv's motion for summary judgment [50] and concludes that Pactiv is entitled to set off $95,431.96 against the judgement arising from the workers' compensation proceeding. The Court denies Pactiv's motion to the extent that Pactiv seeks attorneys' fees and costs under 29 U.S.C. §1132(g)(1). The Court denies Sanchez's motion to dismiss [59] and cross-motion for summary judgment [73]. The Clerk will enter a Rule 58 final judgment thereby closing the case.

**I.    Background**

The Court has taken the relevant facts from Pactiv's amended complaint [49] and from the parties' Local Rule ("L.R.") 56.1 Statements, which include Pactiv's Rule 56.1 Statement

[52], Sanchez's Statement of Facts and Response to Pactiv's Statement of Facts [74], and Pactiv's Response to Sanchez's Statement of Facts [75]. Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and which entitles the movant to judgment as a matter of law. As the Seventh Circuit has stressed, facts are to be set forth in Rule 56.1 statements, and it is not the role of the Court to parse the parties' exhibits to construct the facts. Judges are not "like pigs, hunting for truffles buried in briefs." *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991). It simply is not the Court's job to sift through the record to find evidence to support a party's claim. *Davis v. Carter,* 452 F.3d 686, 692 (7th Cir. 2006). Rather, it is "[a]n advocate's job * * * to make it easy for the court to rule in [his] client's favor[.]" *Dal Pozzo v. Basic Machinery Co.*, 463 F.3d 609, 613 (7th Cir. 2006).

The Court carefully reviews the parties' statements of material facts and eliminates from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support. See, *e.g.*, *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, 2006 WL 980740, at *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004). Merely including facts in a responsive memorandum is insufficient to put issues before the Court. *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995); *Malec v. Sanford*, 191 F.R.D. 581, 594 (N.D. Ill. 2000). Rule 56.1 also requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec*, 191 F.R.D. at 583–85. Where a party improperly denies a statement of fact by failing to provide support for the denial, the Court deems that statement of fact to be admitted.

The facts giving rise to the parties' dispute are largely uncontested. Plaintiff Pactiv Corporation brings suit as a fiduciary of the Pactiv Corporation Master Health and Welfare Plan ("the Plan"). The Plan is an employer funded group benefit plan that provides certain medical benefits to its participants. [74], Def.'s Fact Stmt. ¶ 3; [52], Pl.'s Fact Stmt. ¶ 1. Defendant Jose Sanchez participated in the Plan from January 2001 to December 2006. [52], Pl.'s Fact Stmt. ¶ 1. Under the relevant coverage schedule, medical care "for which benefits are available under workers' compensation laws" is excluded and not covered by the Plan. *Id.* at ¶ 3. The Plan also obligates participants to reimburse Pactiv if another party is liable for a participant's medical expenses. *Id.* Pactiv's vice president and chief human resources officer are responsible for "final interpretation" of the provisions of the Plan. See *id.* at ¶ 4. A participant's entitlement to benefits also is decided in the sole discretion of the Plan administrator. *Id.* Blue Cross Blue Shield ("Blue Cross") administered the Plan's medical program during the relevant time period. See *id.* at ¶ 5.

In April of 2003, Sanchez received medical care for a work-related shoulder injury. [52], Pl.'s Fact Stmt. ¶ 8. He submitted claims for medical benefits to Blue Cross in connection with the injury, and Pactiv fully reimbursed Blue Cross for the claims. See *id.* at ¶¶ 8, 10. On April 29, 2003, Sanchez filed a claim with the Illinois Workers' Compensation Commission (the "Commission") against Pactiv in its capacity as Sanchez's employer (the "Workers' Compensation Proceeding"). Sanchez sought workers' compensation benefits, including medical expenses, arising from the same shoulder injury, for the same benefit payments that Blue Cross made on Pactiv's behalf. *Id.* at ¶¶ 11, 17. Pactiv states that the medical expenses presented to the Commission were identical to the claims submitted to Blue Cross, *id.* at ¶ 17, whereas Sanchez only admits that there is "an identity between [them]," [74], Def.'s Fact Stmt.

¶ 17. Regardless, Sanchez does not appear to contest that the medical expenses that he submitted in the Workers' Compensation Proceeding arose from the medical care that he received for his shoulder injury. See *id.* Sanchez further admits that the funds for which Pactiv could have requested a credit in the Workers' Compensation Proceeding are "identical to the funds" for which Pactiv seeks reimbursement in this action. [72], Def.'s Mem. at 15.

In the Workers' Compensation Proceeding, Pactiv failed to assert its right to a credit for medical expenses paid by the Plan under Section 8(j) of the Illinois Workers' Compensation Act. [75], Pl.'s Resp. to Def.'s Fact Stmt. ¶ 2. That section states:

> In the event the injured employee receives benefits, including medical, surgical or hospital benefits under any group plan covering non-occupational disabilities contributed to wholly or partially by the employer, which benefits should not have been payable if any rights of recovery existed under this Act, then such amounts so paid to the employee * * * shall be credited to or against any compensation payment * * * under this Act.

820 ILCS 305/8(j). On February 26, 2010, the Commission issued a corrected decision that awarded Sanchez workers' compensation benefits, including $113,059.31 for medical expenses, which was affirmed by the Circuit Court of Cook County and the Illinois Appellate Court. [52], Pl.'s Fact Stmt. ¶ 12. The decision included a partial permanent disability award of 80 percent loss of use of Sanchez's right arm. [74], Def.'s Fact Stmt. ¶ 1.

After the award was affirmed by the Illinois Appellate Court, Pactiv paid Sanchez $77,496.91, which included only $15,205.65 in medical expenses. See [52], Pl.'s Fact Stmt. ¶ 13. Sanchez subsequently filed an action in the Circuit Court of Cook County for the outstanding balance of the award. See *id.* at ¶ 14. On July 23, 2013, the Circuit Court of Cook County entered judgment against Pactiv in the amount of $110,682.28 ("the State Court Judgment"), which included a medical expense award of $97,620.64, interest in the amount of $12,664.75, and costs in the amount of $397.00. *Id.* at ¶ 15; see also [52-4], Exh. 8, Order,

*Sanchez v. Pactiv Corp.*, 2012 L 10446 (Ill. Cir. Ct. July, 23, 2013). The Circuit Court found that "no stipulation for a credit for medical expenses purportedly paid by group insurance pursuant to Section 8(j) of the Worker's Compensation Act exists in the record before the Worker's Compensation Commission and no such set off was asserted by [Pactiv] in the record before the Commission." [74], Def.'s Fact Stmt. ¶ 8 (quoting Order). The Circuit Court's Order recently was affirmed by the Illinois Appellate Court. See Order, *Sanchez v. Pactiv, LLC*, 2015 IL App. (1st) 132570-U (1st Dist. June 26, 2015). In its motion for summary judgment, Pactiv requests that this Court declare that it is entitled to set off the benefit payments that it already paid on Sanchez's behalf against the State Court Judgment, pursuant to the terms of the Plan, so that Sanchez does not receive duplicative benefits, or a "double recovery," for his medical expenses.

## II. Legal Standards

The parties have filed cross-motions for summary judgment, and Sanchez also has filed a motion to dismiss the amended complaint. The legal standards that govern are set forth below.

### A. Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson,* 477 U.S. at 252.

### B. Motion to Dismiss Standard under Rule 12(b)(6)

Sanchez moves to dismiss Pactiv's amended complaint under Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion to dismiss is not to decide the merits of the case, but instead to test the sufficiency of the complaint. See *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations also must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and

the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

## III. Discussion

In its motion for summary judgment, Pactiv contends that it already has paid $95,431.96 in medical benefits pursuant to the Plan and that Sanchez has obtained that same amount for the same expenses in the Workers' Compensation Proceeding and resulting State Court Judgment. See [51], Pl.'s Mem. at 8. Pactiv argues that under the terms of Plan, it is not required to pay twice for the same expenses, as Plan benefits are excluded where workers' compensation is available. See *id.* According to Pactiv, Sanchez therefore must reimburse it for the benefit payments that the Plan made. See *id.* Pactiv requests a declaration to that effect. See *id.* at 10 (seeking declaration stating that Pactiv "is entitled to set-off the amount of its [b]enefit [p]ayments plus prejudgment interest, in any event no less than $95,431.91, against the [State Court] Judgment or any amount that Pactiv is ordered to pay [Sanchez] in connection therewith[.]" ). Pactiv also seeks attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

In his opposition to Pactiv's motion, and his motions to dismiss and for summary judgment, Sanchez does not quibble with Pactiv's proposed figures concerning the benefits that it paid or the workers' compensation award. Nor does Sanchez contest that the so-called "double recovery" that Pactiv seeks to prevent is prohibited under the Plan. Indeed, as Pactiv has demonstrated, the Plan expressly provides that "[s]ervices and supplies for which benefits are available under Workers' Compensation Law" are "not covered under th[e] [Plan]." [52-1] at 62, Exh. 1-B, Plan Descriptions at 13. The Plan's subrogation provision further provides that participants must "refund to the Pactiv program the lesser of [a] third party settlement [ ]

7

received [by the participant], or [t]he amount the Pactiv program paid" where a third party is liable for medical expenses. [52-2] at 7, Exh. 1-B, Plan Descriptions at 29. Finally, Pactiv's vice president and chief human resources officer are responsible for "final interpretation" of the Plan. These provisions make clear that Sanchez may not retain the medical benefits that Pactiv paid pursuant to the Plan, because workers' compensation is available, and has been awarded to, Sanchez. See *Sheet Metal Workers' Local 73 Welfare Fund Board of Trustees v. DeGryse, III*, 579 F. Supp. 2d 1063, 1069–70 (N.D. Ill. 2008) (interpreting similar provision that excluded benefits where workers' compensation was available to require a plan participant to return benefits paid by the plan where the participant entered into a settlement on his workers' compensation claim).

As noted, Sanchez does not contest Pactiv's interpretation of the Plan or its general application, as described by Pactiv. Instead, he argues that Pactiv's motion should be denied and the complaint dismissed under the doctrines of waiver, issue preclusion, and claim preclusion. In particular, Sanchez characterizes Pactiv's claim as an abuse of ERISA "to wage a collateral attack on the state court proceedings[.]" [59], Def.'s Mot. at 4. Sanchez also argues that relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) is unavailable; specifically, he contends that the relief that Pactiv seeks is legal, as opposed to equitable, in nature. Finally, Sanchez argues that if the Court grants relief to Pactiv, its recovery should be subject to a credit to him under the common fund doctrine. The Court addresses these issues below, beginning with the threshold question of whether the relief that Pactiv seeks is available under ERISA § 502(a)(3).

### A. Equitable Relief under ERISA § 502(a)(3)

ERISA provides that a civil action may be brought:

by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain

8

> other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3). In this case, Pactiv brings suit "as fiduciary of the [Plan]." See [49], Am. Compl. Pactiv does not seek an injunction, so the relief that it seeks must qualify as "other appropriate equitable relief" under subsection B of § 502(a)(3). See *Mondry v. American Family Mut. Ins. Co.*, 557 F.3d 781, 804 (7th Cir. 2009). In the ERISA context, equitable relief includes only "those categories of relief that were *typically* available in equity." *Id.* (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)) (emphasis in original).

Here, Pactiv seeks a declaration that it is entitled to set off the benefits that it already has paid for Sanchez's medical care against the State Court Judgment that arose from the Workers' Compensation Proceeding. Pactiv's claim is premised on the Plan's requirement that Sanchez "reimburse Pactiv, as Plan administrator" from any amounts that Sanchez receives pursuant to the State Court Judgment for the benefit payments that Pactiv already made. [49], Am. Compl. ¶ 30. The Court accordingly analyzes whether the reimbursement that Pactiv seeks qualifies as "other appropriate equitable relief" under ERISA § 502(a)(3). See *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 285 (1988) ("Actions for declaratory judgments are neither legal nor equitable, and courts have therefore had to look to the kind of action that would have been brought had Congress not provided the declaratory judgment remedy.").

Sanchez maintains that the relief that Pactiv seeks is legal, and therefore unavailable under ERISA § 502(a)(3). *Gutta v. Standard Select Trust Insurance Plans*, 530 F.3d 614 (7th Cir. 2008), leaves little doubt, however, that Pactiv's claim qualifies as appropriate equitable relief. In *Gutta*, an insurance plan filed a counterclaim for restitution of certain disability benefits that it had paid to the plaintiff, arguing that the plaintiff was not entitled to the benefits because its policy contained an offset provision for benefits received from other group insurance

9

plans. 530 F.3d at 616. The Seventh Circuit concluded that the counterclaim sought equitable relief under § 1132(a)(3), because the reimbursement provision in the policy created an "equitable lien by agreement" between the insured and the plan. See *id.* at 620–21. The reimbursement provision in *Gutta* stated that benefits provided by the plan would be reduced by amounts that the insured received, or was eligible to receive, from other group insurance coverage and that the insured had to reimburse the plan for any overpayments. See *id.* Similarly here, Pactiv's Plan excludes coverage for medical care where benefits are available under workers' compensation laws and obligates Sanchez to refund the Plan the amounts that it paid where another party is responsible for medical expenses. See *id.*

In requesting a set-off, Pactiv also is seeking reimbursement from a particular fund—the State Court Judgment that has been entered against it—thus further indicating that the relief that it seeks qualifies as appropriate equitable relief under ERISA. See *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 364 (2006) (finding that fiduciary sought equitable relief under § 1132(a)(3) pursuant to provision that required reimbursement for third party recoveries because the "provision in the [ ] plan specifically identified a particular fund, distinct from the [beneficiaries'] general assets—all recoveries from a third party (whether by lawsuit settlement or otherwise)—and a particular share of that fund to which [the fiduciary] was entitled[.]") (internal quotation marks omitted).

For all of these reasons, the Court concludes that Pactiv seeks equitable relief and may proceed on his declaratory judgment claim under § 1132(a)(3).

B.  Waiver

Sanchez next argues that Pactiv waived its right to a set-off or to reimbursement in this action by failing to assert a Section 8(j) credit in the Workers' Compensation Proceeding.

10

Waiver is the "voluntary and intentional relinquishment or abandonment of a known existing right or privilege, which, except for such waiver, would have been enjoyed." *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 647 (7th Cir. 1993) (quoting *Buffum v. Chase Nat'l Bank*, 192 F.2d 58, 60–61 (7th Cir. 1951)). In support, Sanchez cites two cases in which Illinois courts considered the waiver of credits under the Illinois Workers' Compensation Act. See *Board of Ed. of City of Chicago v. Chicago Teachers Union, Local No. 1*, 86 Ill. 2d 469, 476 (1981) (finding that school board waived its rights to Section 8(j) credits, leading to a double recovery of benefits, where board failed to claim the credits before the commission or an arbitrator); *Walker v. Indus. Com'n*, 345 Ill. App. 3d 1084, 1087–88 (4th Dist. 2004) (observing that employer's statement on a request for hearing form before commission was binding as a stipulation by the parties). Those cases do not suggest, however, that waiver in the context of a workers' compensation proceeding affects a fiduciary's rights under ERISA in a subsequent federal lawsuit.

As Pactiv points out, the basis for its federal claim is its right to enforce the terms of the Plan as a fiduciary of the Plan. Although it is true that Pactiv waived its entitlement to a Section 8(j) credit, see *Sanchez v. Pactiv, LLC*, 2015 IL App (1st) 132570-U, at *6-7 (1st Dist. June 26, 2015), Sanchez provides no authority for the proposition that waiving the credit also waives a fiduciary's right to enforce the terms of an ERISA-regulated plan. The Court's own research also failed to locate any such authority. To the contrary, courts have declined to apply waiver in a broad manner in the context of ERISA claims. See *Thomason*, 9 F.3d at 647–49 (declining to find that insurance company waived its right to rely on the terms of its extended coverage provision where company sent letters that referred to continuing life insurance coverage); *Melton v. Melton*, 324 F.3d 941, 945 (7th Cir. 2003) (requiring "proof of a specific termination of the

11

rights in question in order to effectively waive a beneficiary's interest under an ERISA-regulated plan.").

For all of these reasons, the Court respectfully disagrees with Sanchez's waiver argument and will not deny summary judgment to Pactiv on that basis.

### C. Issue and Claim Preclusion

Sanchez finally argues that Pactiv's ERISA claim is barred by the doctrines of issue and claim preclusion. Sanchez contends that these doctrines apply because Pactiv already had the opportunity to assert a set-off or credit and may not re-litigate that issue or claim here. The Court respectfully disagrees for the reasons explained below.

With respect to issue preclusion, Sanchez bears the burden of establishing that the doctrine applies and must demonstrate with clarity and certainty what was determined in the state court proceedings. See *Jones v. City of Alton, Ill.*, 757 F.2d 878, 885 (7th Cir. 1985). Four elements must be established: (1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action. *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014). Additionally, the party against whom issue preclusion is sought must have had an effective opportunity to litigate the issue in the prior proceeding. *Jones*, 757 F.2d at 885. Issue preclusion is an equitable doctrine and should be applied as fairness and justice require. *Id.*

The Court agrees with Pactiv that the issue that was litigated in state court is distinct from the central liability question here. In the state court proceedings, the parties litigated whether Pactiv was entitled to a Section 8(j) credit under the Workers' Compensation Act. The Illinois

12

Appellate Court upheld the Circuit Court's conclusion that it was not, as Pactiv did not indicate a Section 8(j) credit on its request-for-hearing form in the Workers' Compensation Proceeding. See S*anchez*, 2015 IL App (1st) 132570-U, at \*5. Although the Appellate Court's decision on that issue may not be relitigated here, it has no bearing on Pactiv's ERISA claim—which is premised on whether Sanchez must reimburse it for benefit payments under the terms of the Plan. Because Pactiv's rights as a fiduciary under the Plan were not litigated or decided in the Workers' Compensation Proceeding or the subsequent appeals, Pactiv is free to litigate that issue here. See *Freeman United Coal Min. Co. v. Office of Workers' Comp. Program*, 20 F.3d 289, 294 (7th Cir. 1994) ("[C]ollateral estoppel only applies if the issue sought to be precluded is the same as that involved in the previous action."). In sum, because Sanchez has not met his burden of establishing that the issue that he seeks to preclude previously was litigated, the Court will not apply issue preclusion such as to bar Pactiv from litigating its entitlement to reimbursement under the Plan. See *id.* ("Collateral estoppel is an affirmative defenses, so the burden of establishing each of th[e] elements lies with [the person asserting the defense].") (internal citations omitted).

Turning to claim preclusion, the Court likewise concludes that Pactiv's ERISA claim may proceed. To invoke claim preclusion, Sanchez must prove (1) judgment on the merits in an earlier action; (2) identity of the parties or privies in the two suits; and (3) identity of the cause of action between both suits. *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995). "Once these three requirements have been satisfied, a later suit should be barred." *Id.* "A claim has 'identity' with a previously litigated matter if it emerges from the same 'core of operative facts' as that earlier action.'" *Id.* at 338–39 (quoting *Colonial Penn Life Ins. Co. v. Hallmark Ins. Admin., Inc.*, 31 F.3d 445, 447 (7th Cir. 1994)).

Importantly, however, claim preclusion does not apply if the "plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts * * * and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief[.]" Restatement (Second) of Judgments § 26(1)(c) (1982). See also *Alvear-Velez v. Mukasey*, 540 F.3d 672, 678 n.4 (7th Cir. 2008) (collecting authority, including § 26(1)(c) of the Restatement, regarding exception to the application of claim preclusion). This exception applies here because Pactiv could not have asserted its ERISA rights under the Plan in the Workers' Compensation Proceeding or subsequent appeals, as federal courts have exclusive jurisdiction over § 1132(a)(3) claims. See 29 U.S.C. § 1132(e)(1) ("Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by * * * [a] fiduciary."); *Administ. Comm. v. Gauf*, 188 F.3d 767, 770 (7th Cir. 1999) ("The federal courts possess exclusive jurisdiction over suits brought pursuant to [§ 1132(a)(3)]."). Given the exclusive jurisdiction provision, the courts that were involved in the workers' compensation award and subsequent State Court Judgment could not have exercised subject matter jurisdiction over the ERISA claim at issue here. See *Peick v. Murray*, 141 Ill. App. 3d 1081, 1084 (1st Dist. 1986) (observing that state court's jurisdiction over ERISA claim was precluded by § 1132(e)(1), because federal courts have exclusive jurisdiction over such claims). The Court accordingly concludes that claim preclusion does not apply.

### D. Attorneys' Fees

Having decided that Pactiv's claim is not barred by waiver or the preclusion doctrines, the Court finally turns to the question of attorneys' fees, which has been raised by both parties.

14

Pactiv asks that the Court award attorneys' fees under 29 U.S.C. § 1132(g)(1), and Sanchez argues that any recovery by Pactiv should be decreased under the common fund doctrine. The Court first addresses the common fund doctrine, and then turns to § 1132(g)(1).

1. **The Common Fund Doctrine**

The common fund doctrine is an exception to the general rule that requires litigants to bear their own attorney's fees. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Sanchez argues that under the doctrine, any recovery by Pactiv "must be mitigated by [his] rights under the fund doctrine for the fund th[at] [he] obtained and defended in the Worker's Compensation Commission and state courts." [72], Def.'s Mem. at 14.

Generally speaking, the common fund doctrine entitles "attorneys who generate a fund * * * to be paid from that fund, and the beneficiaries [of the fund] are entitled only to the proceeds net of legal expenses[.]" *Blackburn v. Sundstrand Corp.*, 115 F.3d 493, 494 (7th Cir. 1997). See also *Scholtens v. Schneider*, 173 Ill. 2d 375, 385 (1996) ("The common fund doctrine permits a party who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees."). In the context of a benefits plan seeking reimbursement from a beneficiary who recovered from a third-party, the doctrine "require[s] the party seeking reimbursement to pay a share of the attorney's fees incurred in securing funds from the third party." *U.S. Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1543 (2013). Unless a plan states otherwise, the doctrine ensures that a beneficiary is not solely responsible for the legal costs associated with pursuing a third-party recovery. See *id.* at 1550 ("Third-party recoveries do not often come free: To get one, an insured must incur lawyer's fees and expenses. Without cost sharing [under the common fund

15

rule], the insurer free rides on its beneficiary's efforts—taking the fruits while contributing nothing to labor.").

Here, however, Sanchez did not expend resources to recover from a third-party. Rather, Blue Cross simply paid (and Pactiv reimbursed Blue Cross) for medical expenses that Sanchez incurred for the treatment of his shoulder injury. Any attorneys' fees thus arise from the Workers' Compensation Proceeding, and subsequent proceedings to enforce the award, or from this action—*not* from litigation to recover from a liable third-party. The rationale of the common fund doctrine does not apply, as Pactiv did not receive any benefit by virtue of Sanchez's efforts to recover his medical expenses (again) in state court. See *Boeing Co.*, 444 U.S. at 478 ("The [common fund] doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."). See also *U.S. Airways, Inc.*, 133 S. Ct. at 1550 (explaining that in the ERISA context, the common fund doctrine is used "to allocate the costs of *third-party recoveries* between insurers and beneficiaries") (emphasis added). The Court therefore declines to offset the relief to which Pactiv is entitled by any attorneys' fees or costs that Sanchez has incurred.

### 2. Attorneys' Fees under 29 U.S.C. § 1132(g)(1)

Pactiv argues that it is entitled to attorneys' fees and costs under § 1132(g)(1), which provides that "[i]n any action under this subchapter * * * the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." To recover fees, a party first must show that it is eligible for fees by demonstrating "some success on the merits" on its ERISA claim. *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. College of Wis.*, 657 F.3d 496, 505 (7th Cir. 2011). Once eligibility is established, the court next considers whether fees are appropriate under the circumstances. *Id.* To make this determination, the court asks whether

16

"the losing party's position [was] substantially justified and taken in good faith, or [whether] that party [was] simply out to harass its opponent[.]" *Id.* at 506 (quoting *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998)). Five factors may be considered: "(1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; (3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions." *Id.* at 505–06 (quoting *Quinn*, 161 F.3d at 478).

Although Pactiv has prevailed on the merits of its claim, the Court will exercise its discretion to deny attorneys' fees under the circumstances. Most importantly, there is no indication that Sanchez took the position that it did in this litigation in bad faith or to harass Pactiv. To the contrary, it is undisputed that Pactiv failed to assert a Section 8(j) credit in the Workers' Compensation Proceeding for benefits that it already had paid on Sanchez's behalf under the Plan. Had Pactiv asserted its right to the Workers' Compensation credit, this action may well have been unnecessary. Moreover, although the Court has concluded that Pactiv is entitled to reimbursement for those benefits, Sanchez's waiver and preclusion arguments were not frivolous or patently unreasonable given Pactiv's initial failure to assert its right to a credit. See *Kolbe & Kolbe Health & Welfare Benefit Plan*, 657 F.3d at 506 ("In determining whether the losing party's position was 'substantially justified,' the Supreme Court has stated that a party's position is 'justified to a degree that could satisfy a reasonable person.'") (quoting *Trustmark Life Ins. Co. v. Univ. of Chi. Hosps.*, 207 F.3d 876, 884 (7th Cir. 2000)); see also *DeGryse, III*, 579 F. Supp. 2d at 1071 (denying attorneys' fees to fund, even though court

concluded that fund was entitled to full recovery, in part because defendant made non-frivolous, substantially justified argument, and presented his position efficiently). Additionally, Pactiv's recent motion requesting a status hearing suggests that ordering Sanchez to pay any of Pactiv's attorneys' fees might be burdensome and unrealistic, given Sanchez's financial status. See [85].

## IV. Conclusion

For all of the reasons set forth above, the Court grants in part Pactiv's motion for summary judgment [50] and declares that Pactiv is entitled to set off $95,431.96 in benefits that it already has paid on Sanchez's behalf against the State Court Judgement arising from the Workers' Compensation Proceeding. The Court denies Pactiv's motion to the extent that Pactiv seeks attorneys' fees and costs under 29 U.S.C. §1132(g)(1). The Court denies Sanchez's motion to dismiss the amended complaint [59] and cross-motion for summary judgment [73]. The Clerk will enter a Rule 58 final judgment thereby closing the case.

Dated: July 23, 2015

                                            Robert M. Dow, Jr.
                                            United States District Judge